**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

RANDALL W. DREW
Plaintiff.

Case No.: 1-12-cv-9 MP/GRJ

-v-

ROBERT J. RIVERA,
PATRICK A. CAREY,
CITIBANK ( SOUTH DAKAOTA) N.A.
Defendants.

_______________________________/

## COMPLAINT

Plaintiff, RANDALL W. DREW **(hereafter called "DREW")**, hereby sues Defendants, ROBERT J. RIVERA, PATRICK A. CAREY, and CITI BANK ( SOUTH DAKAOTA) N. A. , an **unknown entity,** the Defendants **collectively and hereafter called "CITI"** ; and alleges:

## PRELIMINARY STATEMENT

1. This is an action for damages brought for damages for violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692 *et seq*., and for damages for violations of the Florida Consumer Collection Practices Act (FCCPA), Fla. Stat. §559(Part VI).

## BASIS FOR INVOKING THE COURT'S JURISDICTION

2. The jurisdiction of this Court is conferred by 28 USC §1331 and 1332, in as much as this action arises under the FDCPA and Drew is seeking damages in excess of $75,000.00.

3. The court has supplemental jurisdiction over state law claims pursuant to 28 USC §1367.

Filed 0113'12 USDC Fln 1 PM 0329



**VENUE**

4. Venue is proper in this District and Division pursuant to 28 U.S.C. §1391b.

**THE PARTIES**

5. DREW (Randall W. Drew), is a natural person and is a resident of the State of Florida.

6. Defendant CITI BANK (SOUTH DAKOTA) N.A.BANK, is an **unknown entity**, and is **not listed** in the main Florida site (Sunbiz.org) as authorized to do business in Florida.

7. The individuals **of Collection Firm can be jointly and serveraly liable for FDCPA Violations. See Arlozynski v. Rubin & Debski, P.A., (M.D. Fla. May 7, 2010) and Belin et al v. Litton Loan Servicing, LP.**

**THE FACTS**

8. On or about September 10, 2010, CITI filed suit against DREW alleging that DREW owed an alleged debt to CITI BANK ( SOUTH DAKAOTA) N. A., hereafter called **"LENDER"**

9. DREW made many requests for a deposition of LENDER's representative and it took a hearing on a motion to compel to even get a deposition of LENDER's representative to answer questions under oath about the alleged debt.

10. LENDER's representative under sworn testimony stated under oath that Randal W. Drew (**"DREW") is the only person** that owes the debt, and DREW **individually** owes the alleged debt, and she further stated that the LENDER has no facts whatsoever to show the debt as a business debt. **DREW is a consumer** within the meaning of the FDCPA, 15 U.S.C. §1692a(3).

11. LENDER's representative under sworn testimony, stated that Exhibit 1-A  1-B  1-C  1-D was the original agreement between the parties. There are **no signatures** on the agreement. Further, there are **no addresses** of the parties on the alleged agreement.

12. LENDER's representative under sworn testimony produced an alleged agreement, that she stated under oath that this was the original agreement between the parties, she stated that this paper was a copy of the original contract in 2006, but the lower corner of the page has a **2009 copyright** (or similar mark), which means factually the alleged agreement **did not even exist** at the time (year 2006) that the LENDER's representative said the alleged agreement was entered into.

13. LENDER's representative under sworn testimony, further stated that the account that the CITI is attempting to collect monies from DREW on, is **not** the same account that the alleged debt occurred and that LENDER had **not given** DREW a **notice** of transfer of the first account (ending in 2442) to the account (ending in 5459) that CITI is pursuing debt collections against DREW. Even if the DREW owed a debt under the alleged original account (ending in 2442), there was not notification that the transfer of such alleged debt was transfer to the account (ending 5459) that CITI, as a debt collector, is currently attempting to collect monies from DREW for such alleged debt.

14. CITI filed confidential information in the public record and was sent a letter on May 20, 2011 by Ms. Julia Rogers, Civil Department Supervisor, Clerk of the Circuit Court of Alachua County, Florida, after CITI already had put confidential information about DREW in the public records. A true and correct copy of said letter is attached hereto as Exhibit A.

15. On September 2, 2011, DREW sent a letter to Mr. Robert Rivera, attorney for LENDER by certified mail requesting validation of the alleged debt. A true and correct copy of

said letter is attached hereto as Exhibit B. The foregoing letter was received by Mr. Rivera but he has not responded to the same.

16. On October 7, 2011 DREW sent a letter to Mr. Patrick A. Carey, attorney for LENDER by certified mail requesting validation of the alleged debt. A true and correct copy of said letter is attached hereto as Exhibit C. The foregoing letter was received by Mr. Carey but he did not respond to the same.

17. On November 18, 2011 DREW sent a letter to CITI BANK ( SOUTH DAKAOTA) N.A., at P.O. Box 6235 Sioux Falls, South Dakota (an address on an exhibit attached to the complaint against Drew) demanding validation of the alleged debt debt. A true and correct copy of said letter is attached hereto as Exhibit D. The foregoing letter was sent by certified mail and received by CITI BANK ( SOUTH DAKAOTA) N. A. To this date Drew has not received a response to said letter.

18. On November 18, 2011 DREW sent a letter to CITI BANK ( SOUTH DAKAOTA) N. A at the address of LENDER's representative (Judy Delage) who gave sworn testimony as such, on May 19, 2011, demanding validation of the alleged debt. The letter was sent by certified mail and received by CITI BANK (SOUTH DAKAOTA) N. A. A true and correct copy of said letter is attached hereto as Exhibit E. To this date Drew has not received a response to said letter.

19. To date CITI has failed to validate the alleged debt, and **none** of the Defendants, individually or collectively, have validated **the address of the LENDER**, nor the address of the alleged original creditor.

20. CITI has also failed to cease collection activity of the alleged debt, and **continues to pursue collection of the alleged debt.**

**COUNT I**
**VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA), 15 U.S.C. §1692 BY DEFENDANTS**

21. Paragraphs 1 through 20 are realleged as though fully set forth herein.

22. DREW is a consumer within the meaning of the FDCPA, 15 U.S.C. §1692a(3).

23. Defendants PATRICK A. CAREY and ROBERT J. RIVERA are debt collectors within the meaning of the FDCPA, 15 U.S.C. §1692a(6).

24. CITI violated the FDCPA. CITI's violations include, but are not limited to, the following:

(a) CITI violated 15 U.S.C. §1692e(2) by **falsely representing the character, amount,** or **legal status** of any debt.

(b) CITI violated 15 U.S.C. §1692e(8) by communicating or threatening to communicate to any person credit information which is known or which should be known to be false**, including the failure to communicate that a disputed debt is disputed.**

(c) CITI violated 15 U.S.C. §1692e(10) by the use of any false representation or deceptive means to collect or attempt to collect any debt **or to obtain information concerning a consumer.**

(d) CITI violated 15 U.S.C. §1692f(1) by the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such **amount is expressly authorized by the agreement** creating the debt or permitted by law.

(e) CITI violated 15 U.S.C. §1692g by **not ceaseing collection** activity after failing to

validate the debt after the consumer (Drew) notified the CITI in writing that the debt, or any portion thereof, was disputed. Neither the **address** of the original creditor, nor the address of the current creditor (if different than the original creditor) has **been provided** Drew.

WHEREFORE, DREW demands judgment for damages against CITI for actual or statutory damages, and punitive damages, attorney's fees and costs, pursuant to 15 U.S.C. §1692k.

**COUNT II**
**VIOLATION OF FLORIDA CONSUMER COLLECTION PRACTICES ACT (FCCPA), FLA. STAT. §559 (Part VI) BY DEFENDANTS**

25. Paragraphs 1 through 20 are re-alleged as though fully set forth herein.

26. DREW is a consumer within the meaning of the FCCPA, Fla. Stat. §559.55(2).

27. CITIBANK (SOUTH DAKOTA) N.A is a creditor within the meaning of the FCCPA, Fla. Stat. §559.55(3) and Defendants PATRICK A. CAREY and ROBERT J. RIVERA are debt collectors within the meaning of the FCCPA, Fla. Stat. §559.55(6).

28. CITI violated the FCCPA. Defendants' violations include, but are not limited to, the following:

(a) CITI violated Fla. Stat. §559.72(6) by disclosing information concerning the existence of a debt known to be **reasonably disputed** by the debtor without disclosing that fact.

(b) CITI violated Fla. Stat. §559.72(9) by claiming, attempting or threatening to enforce a debt when such person **knows that the debt is not legitimate**.

WHEREFORE, Plaintiff (DREW) demands judgment for damages against Defendants (CITI) for actual or statutory damages, and punitive damages, attorney's fees and costs, pursuant to Fla. Stat. §559.77.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Dated: January 13, 2012

Respectfully submitted,

**RANDALL W. DREW**
**11422 N.W. 16TH Place**
**Gainesville, FL** 32606
**352-316-1595**

provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

**Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

**Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

**When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding

using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

### *Survival and Severability of Terms*

This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, or the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the entire arbitration provision shall not remain in force. No portion of this arbitration provision may be amended, severed or waived absent a written agreement between you and us.

## Applicable Law and Enforcing our Rights

**Applicable Law:** The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located.

**Enforcing this Agreement:** We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

**Cooperation on information:** Subject to applicable law, you will provide us any information that we reasonably require about your or an authorized user's use of the card and will supply us any documentation or support related to that use that we may reasonably request. You also will provide reasonable cooperation to us in any investigation, litigation or prosecution arising in connection with the use of a card.

**Right to Set-Off:** Subject to applicable law, you agree that we have the right to set-off and/or recoup any amount you owe on your account or any claim we have related to this Agreement against any demand deposit account or any other asset account you have with us or any of our affiliates.

**Collection Costs:** If you are in default and fail to pay any amounts you owe on your account, you will be liable for our costs of collection to the extent permitted by law. This includes, for example, the reasonable attorney's fees we incur, plus the costs and expenses of any legal action, if we refer collection of your account to a lawyer who is not our salaried employee.

**Assignment:** We may assign any or all of our rights and obligations under this Agreement to a third party.

## Notify Us In Case of Errors or Questions About Your Bill

If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) as soon as possible at the Customer Service address provided on the billing statement. We must hear from you in writing no later than sixty (60) days after we sent you the first statement on which the error or problem appeared. In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- The Transaction Date and Post Date.
- Vendor name.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

## For Further Information

Call the toll-free Customer Service telephone number shown on the billing statement or on the back of your card. You can also call local or toll-free Directory Assistance to get our telephone number.

© 2008 Citibank (South Dakota), N.A.
Citi, Citibusiness, and Citi with Arc Design are registered service marks of Citigroup.

BCCNICARD 8/08

# CARD AGREEMENT

This Card Agreement, which includes your card carrier, is your contract with us and governs the use of your card and account. The card carrier contains important account information, including your annual percentage rates and the amount of any membership fee. Please read and keep these documents for your records.

### *FACTS ABOUT RATES AND FEES*

For complete information about these facts, please see the related sections in this Card Agreement.

**RATES—FINANCE CHARGES**

**Purchase and Cash Advance APRs:** See card carrier. All APRs based on the Prime Rate may vary each billing period.

**Default APR:** See card carrier. The Default APR equals the greater of (1) the Prime Rate plus up to 23.99% or (2) up to 28.99%. All APRs may automatically increase up to the Default APR if you fail to make a payment to us when due, exceed your credit line, or make a payment to us that is not honored.

**Minimum Finance Charge:** $0.50.

**TRANSACTION FEES—FINANCE CHARGES**

**Balance Transfer Fee:** 3% of each balance transfer, $5 minimum.

**Cash Advance Fee:** 3% of each cash advance, $5 minimum.

**Foreign Purchase Fee:** 3% of the U.S. dollar amount of each purchase made outside the U.S., whether made in U.S. dollars or in a foreign currency.

**OTHER FEES**

**Late Fee:** $15 on balances up to $100; $29 on balances of $100 up to $250; $39 on balances of $250 and over.

**Over-the-Credit-Line Fee:** $39.

**Annual Membership Fee:** See card carrier.

**Returned Payment Fee:** $39.

**Returned Balance Transfer Check or Convenience Check Fee:** $39.

**Stop Payment on Balance Transfer Check or Convenience Check Fee:** $39.

**Rates, fees, and terms may change:** We may change the rates, fees, and terms of your account at any time for any reason. These reasons may be based on information in your credit report, such as your failure to make payments to another creditor when due, amounts owed to other creditors, the number of credit accounts outstanding, or the number

"Exhibit 1-A"

credit inquiries. These reasons may also include competitive or market-related factors. If we make a change for any of these reasons, you will receive advance notice and a right to opt out in accordance with this Agreement.

## Definitions

*account*: the relationship established between you and us by this Card Agreement. The term "account" includes any sub-account we establish for you or any authorized user.

*APR*: annual percentage rate.

*authorized user*: any person you allow to use your account.

*card*: one or more cards or other account access devices, including account numbers, that we issue to you to obtain credit under this Card Agreement.

*Card Agreement (or Agreement)*: this document and the card carrier.

*we, us, and our*: Citibank (South Dakota), N.A., the issuer of your account.

*you, your, and yours*: the corporation, limited liability company, partnership, sole proprietorship, association, or other entity or organization that applied to open the account and any successors to that entity or organization.

## Your Account

You agree to use your account in accordance with this Agreement. This Agreement is binding on you unless you cancel your account within 30 days after receiving the card and you have not used or authorized use of the card. You must pay us for all amounts due on your account as specified in this Agreement. Your account must only be used for lawful transactions.

**Business Purpose:** You agree that your account is established and will be used only for commercial or other business purposes. You further agree that each use of the card is a loan from us to you for commercial or other business purposes. You agree that the account will not be used for personal, family, or household purposes and, as a result of that agreement, understand that certain federal and state consumer protection laws, which impose duties on us and grant rights to consumers for consumer accounts, do not apply to this account. You will, however, be liable to us for any use of the account for personal, family, or household purposes by you or authorized users, whether or not that use benefited you.

**Authorized Users:** You may allow authorized users to use your account. You may request additional cards for authorized users. You are responsible for controlling authorized users. We are not responsible for controlling them. You must pay us for all charges made by authorized users even if you did not intend to be responsible for those charges.

We may cancel an authorized user's card or account privileges at any time for any reason without prior notice to you or the authorized user. You may cancel an authorized user's card or account privileges at any time by notifying us in writing of the cancellation. When either we or you initiate such a cancellation, you must promptly retrieve and, unless we instruct you otherwise, destroy any credit card and any balance transfer or convenience checks issued on your account that were given to the authorized user. When you initiate such a cancellation, you must also inform the authorized user that the authorized user no longer has permission to use the card or your account. You agree to indemnify and hold harmless us and our parent company, subsidiaries and affiliates from any losses, damages or other liability arising from any claim for wrongful cancellation by the authorized user following a cancellation initiated by you.

**Credit Line:** Your initial credit line appears on the card carrier. The full amount of your credit line is available to buy or lease goods or services where the card is honored. We may make part of your credit line available for cash advances. If we do, this will be called your cash advance line. We may change your credit line or cash advance line at any time for any reason. We will notify you of any change, but the change may take effect before you receive the notice. The total balance on your account, including periodic finance charges and fees, must always remain below the credit line. However, if the total balance exceeds your credit line you must still pay us. If your account has a credit balance, we may reduce the credit balance by any new charges on your account. You may not maintain a credit balance in excess of your credit line.

**Billing Statement:** Your billing statement shows the activity on your account. We deliver a statement to only one address. You must notify Customer Service of a change in address. If we deem your account uncollectible or institute collection proceedings by sending it to an outside agency or attorney for collection, we may stop sending you statements. Periodic finance charges and fees continue to accrue even if we stop sending statements.

The total amount you owe as appears as the New Balance on the billing statement. To determine the New Balance we begin with the total balance at the start of the billing period. We add any purchases or cash advances and subtract any

credits or payments credited as of that billing period. We then add any periodic finance charges or fees and make other adjustments.

## APRs

**APRs Based on Prime:** We calculate any APR based on the U.S. Prime Rate ("Prime Rate") by adding the applicable amount that appears on the card carrier to the Prime Rate. For each billing period we use the Prime Rate published in *The Wall Street Journal* two business days prior to the closing date for that billing period. If *The Wall Street Journal* does not publish the Prime Rate, we may substitute a similar published rate. A change in an APR due to a change in the Prime Rate takes effect as of the first day of the billing period for which we calculate the APR. We apply the new applicable APR to any existing balances, subject to any promotional rate that may apply.

**Default Rate:** All your APRs may increase if you default under any Card Agreement that you have with us because you fail to make a payment to us when due, you exceed your credit line, or you make a payment to us that is not honored. In these circumstances, we may automatically increase your APRs (including any promotional APRs) on all balances to the Default APR, which equals the greater of (1) the Prime Rate plus up to 23.98% or (2) up to 28.99%. Factors considered in determining your Default APR may include how long your account has been open, the timing or seriousness of a default under any Card Agreement that you have with us, or other indications of account performance. The Default APR takes effect as of the first day of the billing period in which you default. We will lower the APR for all balances at the Default APR if you meet the terms of all Card Agreements you have with us for twelve billing periods in a row. We may lower these APRs sooner based on your record with us.

**Effect of APR Increases:** If an APR increases, periodic finance charges increase and your minimum payment may increase.

## Periodic Finance Charges Based On APRs

**Periodic Finance Charges:** Periodic finance charges are finance charges that are added to your account when we apply the applicable APR to the balances on your account. We calculate periodic finance charges separately for each balance subject to different terms, for example, standard purchases, standard cash advances, and each promotional offer. The total periodic finance charge for the billing period equals the daily periodic finance charges for each balance for each day in the

billing period. This method of calculating periodic finance charges results in daily compounding of finance charges.

**When Periodic Finance Charges Begin to Accrue:** Periodic finance charges begin to accrue on a charge from the date it is added to the daily balance and continue to accrue until payment in full is credited to your account. (Charges include purchases, balance transfers, cash advances, transaction fees, other fees, and any minimum finance charge.) You can avoid periodic finance charges on purchases (excluding balance transfers) that appear on your current billing statement if you paid the New Balance on the last statement by the payment due date on that statement and you pay your New Balance by the payment due date on your current statement. If you made a balance transfer, you may be unable to avoid periodic finance charges on new purchases, as described in the balance transfer offer.

**Calculation of Periodic Finance Charges:**

- For each balance, we multiply the daily balance by the applicable daily periodic rate. We do this for each day in the billing period. A daily periodic rate is the applicable APR divided by 365. A billing period begins on the day after the closing date of the previous billing period and includes the closing date of the current billing period.
- To get the daily balance, we take the beginning balance for each balance every day (including unpaid periodic finance charges from previous billing periods), add any new charges, and any periodic finance charge on the previous day's balance, subtract any credits or payments credited as of that day, and make other adjustments. A credit balance is treated as a balance of zero.
- We add a charge to the daily balance as follows: We add a purchase to the appropriate balance as of the Transaction Date on the billing statement. We add a balance transfer or cash advance to the appropriate balance as of the Post Date on the statement. We add any transaction fees for purchases, balance transfers, or cash advances to the same balance as the transaction as of the same date the transaction is added to the daily balance. The Post Date is the date we receive your request for the balance transfer or cash advance, including a request that we complete a balance transfer or cash advance convenience check for a specific amount. If you send a balance transfer or convenience check directly to someone, the Post Date is the date we receive the check for payment.
- To get the total periodic finance charge, we add up all of the daily periodic finance charges for each balance for each day in the billing period.

"Exhibit 1-B"

**Minimum Finance Charge:** If the periodic rate finance charge would otherwise be less than $0.50, we assess a minimum FINANCE CHARGE of $0.50. We add the amount to any balance that is assessed a finance charge.

## Transaction Fees

**Transaction Fee for Balance Transfers:** You obtain a balance transfer if you obtain funds through a balance transfer check or transfer a balance without using a cash advance convenience check. We treat balance transfers as purchases unless otherwise provided in this Agreement. For each balance transfer we add an additional FINANCE CHARGE of 3% of the amount of the balance transfer, but not less than $5.

**Transaction Fee for Cash Advances:** You obtain a cash advance if you obtain funds through an automated teller machine (ATM), convenience check, home banking, or financial institution; make a wire transfer; obtain a money order, traveler's check, lottery ticket, casino chip, or similar item; or engage in a similar transaction. For each cash advance we add an additional FINANCE CHARGE of 3% of the amount of the cash advance, but not less than $5.

**Transaction Fee for Foreign Purchases:** We add a fee of 3% of the U.S. dollar amount of each purchase made outside the U.S., whether made in U.S. dollars or in a foreign currency. This fee is a FINANCE CHARGE.

## Other Fees

**Late Fee:** We add a late fee to the standard purchase balance for each billing period you fail to pay, by its due date, the Minimum Payment (less any amount over your credit line shown on your billing statement). This fee is based on your account balance as of the payment due date. It is: $15 on balances up to $100, $29 on balances of $100 up to $250, and $39 on balances of $250 and over.

**Over-the-Credit-Line Fee:** We add a $39 fee to the standard purchase balance for each billing period that the New Balance exceeds your credit line. We add this fee even if we approved transactions that contribute to the New Balance exceeding your credit line.

**Annual Membership Fee:** We add any applicable annual membership fee to the standard purchase balance. This fee is non-refundable unless you notify us to cancel your account within 30 days of the mailing or delivery date of the billing statement on which the fee is billed.

**Returned Payment Fee:** We add a $39 fee to the standard purchase balance if a payment check or similar instrument is

not honored or is returned because it cannot be processed, or if an automatic debit is returned unpaid. We assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Balance Transfer Check or Convenience Check Fee:** We add a $39 fee to the standard advance balance if we decline to honor a balance transfer check or convenience check. We may decline to honor these checks if, for example, the amount of the check would cause the balance to exceed the cash advance line or credit line, if you default, if you did not comply with our instructions regarding the check, or if your account has been closed.

**Stop Payment on Balance Transfer Check or Convenience Check Fee:** We add a $39 fee to the standard advance balance if we honor your request to stop payment on a balance transfer check or convenience check. To stop payment on a balance transfer check or convenience check write us at Citibusiness Credit Cards, P.O. Box 6235, Sioux Falls, South Dakota 57117-6235, or call the Customer Service number on the billing statement. If you call, you must confirm the call in writing within 14 days. A written stop payment order remains in effect for 6 months unless renewed in writing.

**Balance Transfer Checks and Convenience Checks:** Each check must be in the form it was issued and used according to any instructions we give. The checks must not be used to pay an amount owed us under this or another Card Agreement that you have with us. We do not certify these checks or return any such checks that have been paid.

## Information on Foreign Currency Conversion Procedures

If you make a transaction in a foreign currency, other than a cash advance made at a branch or ATM of one of our affiliates, MasterCard or Visa, depending on which card is used, converts the amount into U.S. dollars as follows:

• MasterCard complies with its foreign currency conversion procedures then in effect. MasterCard currently uses a conversion rate in effect one day prior to its transaction processing date. Such rate is either a wholesale market rate or the government-mandated rate.

• Visa complies with its foreign currency conversion procedures then in effect. Visa currently uses a conversion rate in effect on its applicable central processing date. Such rate is either a rate it selects from the range of rates available in wholesale currency markets, which may vary from the rate it receives, or the government-mandated rate.

If a cash advance is made in a foreign currency at a branch or ATM of one of our affiliates, the amount is converted into U.S. dollars by our affiliate in accordance with its foreign currency conversion procedures then in effect. Our affiliate currently uses a conversion rate in effect on its applicable processing date. Such rate is either a mid-point market rate or the government-mandated rate.

The foreign currency conversion rate in effect on the applicable processing date for a transaction may differ from the rate in effect on the Transaction Date or Post Date on your billing statement for that transaction.

If a transaction is converted by a third party prior to such transaction being processed by MasterCard or Visa, the foreign currency conversion rate for that transaction will be the rate selected by that third party.

## Payments

**Minimum Payment:** Each month you must pay at least the Minimum Payment by the payment due date. The sooner you pay the New Balance, the less you will pay in periodic finance charges.

To calculate the Minimum Payment, we begin with any past due amount and add any amount in excess of your credit line. We then add the largest of the following:

- The New Balance on the billing statement if it is less than $20;
- $20 if the New Balance is at least $20;
- 1% of the New Balance (which calculation is rounded down to the nearest dollar) plus the amount of your billed periodic finance charges and any applicable late fee; or
- 1.5% of the New Balance (which calculation is rounded down to the nearest dollar).

When we calculate the Minimum Payment, we may subtract from the New Balance certain fees added to your account during the billing period. We may also include in the Minimum Payment any additional amount specified in a promotional offer. The balance of any such promotional offer is not included in the four bullets above. The Minimum Payment is never more than the New Balance.

**Application of Payments:** We apply payments and credits to low APR balances before higher APR balances. That means your savings will be reduced if you make transactions that are subject to higher APRs.

**Payment Instructions:** Payments are credited in accordance with the payment instructions on the billing statement. You

must pay us in U.S. dollars using a check, similar instrument, or automatic debit that is drawn on and honored by a bank in the U.S. Do not send cash. We can accept late or partial payments, and payments that reflect "paid in full" or other restrictive endorsements, without losing our rights. We reserve the right to accept payments made in foreign currency and instruments drawn on funds on deposit outside the U.S. If we do, we select the currency conversion rate at our discretion and credit your account in U.S. dollars after deducting any costs incurred in processing your payment, or we may bill you separately for such costs.

## Credit Reporting

We may report information about your account to credit reporting agencies. Late payments, missed payments, or other defaults on your account may appear on your credit report. If you request cards on your account for others, we may report account information in the names of those other persons as well. We may also obtain follow-up credit reports on you (for example, when we review your account for a credit line increase). If you wish to know which agencies we contacted for a credit report about a natural person, write us at the Customer Service address on the billing statement.

If you think we reported erroneous information to a credit reporting agency, write us at the Customer Service address on the billing statement. We will promptly investigate the matter, and if we agree with you, we will contact each credit reporting agency to which we reported and request a correction. If, after our investigation, we disagree with you, we will tell you in writing or by telephone. If you are a natural person and the report was about you, we will tell you how to submit a statement to those agencies for inclusion in your credit report.

## Changes to this Agreement

We may change the rates, fees, and terms of this Agreement at any time for any reason. These reasons may be based on information in your credit report, such as your failure to make payments to another creditor when due, amounts owed to other creditors, the number of credit accounts outstanding, or the number of credit inquiries. These reasons may also include competitive or market-related factors. Changing terms includes adding, replacing, or deleting provisions relating to your account and to the nature, extent, and enforcement of the rights and obligations you or we have relating to this Agreement. These changes are binding on you. However, if the change will cause a fee, rate or minimum payment to increase,

"Exhibit 1-C"

we will mail you written notice at least 15 days before the beginning of the billing period in which the change becomes effective. If you do not agree to the change, you must notify us in writing within 25 days after the effective date of the change and pay us the total balance, either at once or under the terms of the unchanged Agreement. Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

### Default

You default under this Agreement if you fail to pay the Minimum Payment by its due date; exceed your credit line; pay by a check or similar instrument that is not honored or that we must return because it cannot be processed; pay by automatic debit that is returned unpaid; fail to follow the terms of this Agreement or have made any false or misleading statements on the application for your account; default under any other Card Agreement or other credit agreement that you have with us; become insolvent; suffer an attachment, execution, or levy against you or your property; make an assignment for the benefit of creditors; file a bankruptcy petition or have one filed against you; have a guardian, conservator, receiver, custodian, or trustee appointed for you; are generally not paying your debts as they become due; or experience an adverse change in your financial standing. You also default under this Agreement if you agree to, become subject to, or experience a material change in the nature of your business, a cessation of ongoing business operations, a change in the control or structure of you or your business, or the sale or other transfer of all or substantially all of your assets. If you default, we may close your account and demand immediate payment of the total balance.

### Refusal of the Card, Closed Accounts, and Related Provisions

**Refusal of the Card:** We do not guarantee approval of transactions and are not liable for transactions that are not approved, either by us or by a third party, even if you have sufficient credit available. We may limit the number of transactions that may be approved in one day. If we detect unusual or suspicious activity, we may suspend your credit privileges until we can verify the activity.

**Preauthorized Charges:** If you default, if the card is lost or stolen, or we change your account for any reason, we may suspend automatic charges with third party vendors. If preauthorized charges are suspended, you are responsible

for making direct payment for such charges until you contact the third party to reinstate the automatic charges.

**Lost or Stolen Cards, Account Numbers, or Convenience and Balance Transfer Checks:** If any card, account number, or check is lost or stolen or if you think someone used or may use them without permission, call us at the Customer Service number on the billing statement or the number obtained by calling toll-free or local Directory Assistance. We may require you to provide certain information in writing to help us find out what happened and to comply with our investigation. You must identify for us the charges that were not made by you, or someone authorized by you, and from which you received no benefit. You are liable for any unauthorized use of your account, including any card, account number, or check, if the section concerning Waiver of Limitations on Unauthorized Use Liability applies to you.

**Waiver of Limitations on Unauthorized Use Liability:** You agree, in accordance with Section 135 of the federal Truth in Lending Act, that if at any time we have, at your request, issued ten (10) or more cards for use by your employees, you waive any and all limitations on your liability for unauthorized use of such cards that you may have under the federal Truth in Lending Act.

**Closing Your Account:** You may close your account by notifying us in writing or by calling toll-free at the Customer Service number shown on the billing statement or on the back of your credit card. When you do, you must promptly retrieve and, unless we instruct you otherwise, destroy all credit cards, convenience checks, and balance transfer checks issued on your account. Even after your account is closed, you must still repay the total balance in accordance with this Agreement. We may close your account or suspend account privileges at any time for any reason without prior notice. We may also reissue a different card at any time. You must return any card to us upon request.

## ARBITRATION

***PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.*** **IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**

***Agreement to Arbitrate:*** Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

### *Claims Covered*

**What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

**Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

**What time frame applies to Claims subject to arbitration?** Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

**Broadest interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

**What about Claims filed in Small Claims Court?** Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim.

### *How Arbitration Works*

**How does a party initiate arbitration?** The party filing an arbitration must choose one of the following two arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association or National Arbitration Forum. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

American Arbitration Association
1633 Broadway, Floor 10
New York, NY 10019
Web site: www.adr.org

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405
Web site: www.arbitration-forum.com

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

**What procedures and law are applicable in arbitration?** A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief

"Exhibit 1-D"



# CLERK OF THE CIRCUIT & COUNTY COURT

Alachua County Courthouse - Family & Civil Justice Center
201 East University Avenue
Post Office Box 600 • Gainesville, Florida 32601
Telephone (352) 374-3636
J.K. Irby – Clerk
www.alachuaclerk.org

May 20, 2011

PATRICK A. CAREY, ESQ.
10967 LAKE UNDERHILL ROAD, UNIT 125
ORLANDO, FL. 32825

RE: CITIBANK (SOUTH DAKOTA) NA
-vs-
RANDALL W DREW

"Exhibit A"

Case Number: 2010 CC 003969

Dear Mr. Carey:

We have received your Notice of Confidential Information within Court Filing and we are unable to process your request as you must file a Request Form for Number Redaction. I have enclosed a blank Request Form For Number(s) Redaction for you to complete and return to our office. Please be advised that the request must specify the document name, document file date, page number and number type that you are requesting to be redacted.

Please contact our office if we may be of further assistance.

Sincerely,

Julia Rogers
Civil Department Supervisor

JR/lh

c file

Co126

**Randall W Drew**
**11422 NW 16th Place**
**Gainesville, FL 32606**

September 2 , 2011

"Exhibit B"

Robert J. Rivera, Esquire and Individually
10967 Lake Underhill Road Unit 125
Orlando, Florida 32825

**BY CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Re: **CASE NUMBER: 2010 CC 3969 CITIBANK (SOUTH DAKOTA), N.A., PLAINTIFF, vs. RANDALL W. DREW, DEFENDANT, filed in the County Court of the Eight Judicial Circuit of the State of Florida in and for Alachua County Civil Division.**

Subject: Request for Validation/Verification and Claim/Alleged Debt Dispute
Pursuant to the Federal Fair Debt Collection Practices Act

Good Morning/Afternoon:

This is my request for claim validation and verification pursuant to the Federal Fair Debt Collection Practices Act. This request includes **any debt** allegedly owed to **original plaintiff** and any debt allegedly owed **to amended plaintiff**. Please note that it is not now, nor has it ever been my intention to avoid paying any obligation that I lawfully owe. In order that I can make arrangements to pay an obligation which I may owe, please document and verify your claim, that is, the alleged "debt" by complying in good faith with this request for validation and **notice that I dispute** part of, or all of the alleged debt that is listed and or alleged to be owed to the Plaintiff **(original and amended)** in the above referenced case. Accordingly, I request that you provide me an **authenticated, correct and true copy** of the following records:

**The original agreement, note, or contract** under which the debt was allegedly incurred, redacting any social security number(s) or driver license number(s) to prevent identify theft, and state under penalty of perjury that your client named above is the holder in due course of the agreement and will produce the original for my own and a judge's inspection should there be a trial to contest these matters.

The **legal name** and **address of the original holder** of the agreement, note, or contract under which the debt allegedly incurred, and if such debt has **been transferred and or assigned** in any way, to the party (i.e. Plaintiff) who claims to be owed such debt, then **clearly show and provide** such transfer and or assignment of the debt to the party (i.e. Plaintiff).

Letter to: Robert J. Rivera, Esquire
Re: **CASE NUMBER: 2010 CC 3969 CITIBANK (SOUTH DAKOTA), N.A., PLAINTIFF, vs. RANDALL W. DREW, DEFENDANT.**
Your records relating to Randall W. Drew
Request for Validation/Verification and Claim/
Alleged Debt Dispute
September 2, 2011
Page Two (2)

Identifying by name and address all persons, corporations, associations, **or any other parties having an interest** in legal proceedings regarding the alleged debt.

Additionally, I request that you verify under penalty(ies) of perjury, that:

As a debt collector, you have **not purchased** evidence of debt and are proceeding with collection activity in the name of the original creditor or any successor(s) in interest(s).

**You are authorized to act** for the party(ies) you claim to represent including but not limited to the original creditor or any successor(s) in interest(s)..

You know and understand that **contacting me** again after receipt of this notice **without providing procedurally proper validation and verification of the alleged debt** constitutes the use of interstate communications in a scheme of fraud by advancing a writing, which you know or have any cause to believe is false or misleading with the intention that others rely on the written communication to their detriment.

Further, please note **especially** that this validation and verification request is being made without prejudice to any of my rights or privileges. Accordingly, I hereby expressly reserve all rights and privileges including by way of specific example but not limited to the right to contest or challenge the validity of any contract(s), contractual provision(s), claim(s) or alleged debt(s) in the appropriate manner.

**Please cease** any and all collection activity, per law, until you have provided **procedurally proper validation and verification of the alleged debt.**

I await your prompt and full response to this request.

Very truly yours,

Randall W. Drew

**Randall W Drew**
**11422 NW 16th Place**
**Gainesville, FL 32606**

October 7, 2011

"Exhibit C"

Robert J. Rivera, Esquire and Individually
Patrick A. Carey, Esquire and Individually
10967 Lake Underhill Road Unit 125
Orlando, Florida 32825

**BY CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Re: **CASE NUMBER: 2010 CC 3969 CITIBANK (SOUTH DAKOTA), N.A., PLAINTIFF, vs. RANDALL W. DREW, DEFENDANT, filed in the County Court of the Eight Judicial Circuit of the State of Florida in and for Alachua County Civil Division.**

Subject: **Failure to Cease** till Validation/Verification of Debt

Good Morning/Afternoon:

You have **not** responded to my Debt validation and verification request pursuant to the Federal Fair Debt Collection Practices Act, that was mailed to you (via **CRRM # 7008 1140 0001 0225 7109**) September 2, 2011 and such was delivered by the United States Postal Service, and signed for you by a person in your office on **September 6, 2011**, a copy of such is attached.

You, and as a Debt collector, know, that you **contacting me** after receipt of request (letter) **without providing procedurally proper validation and verification of the alleged debt** is a violation under the Federal Fair Debt Collection Practices Act and you were informed that such **may also** constitute the use of interstate communications in a scheme of fraud by advancing a writing, which you know or have any cause to believe is false or misleading with the intention that others rely on the written communication to their detriment.

**You have not ceased** any and all collection activity until you **provided procedurally proper validation and verification of the alleged debt** under the Federal Fair Debt Collection Practices Act and other Federal and State Statutes, since **after** you received my request / letter on September 6, 2011 **you have continued in your collection** activity and on September 19th, 2011 you mailed to me discovery requests.

I demand that you immediately **ceased** from any and all collection activity, and demand your **immediate response** to this matter, including but not limited to: (i) your written response **whether or not** you are completely stopping all collection activities until full compliance with the proper validation request that you received on September 6, 2011 (ii) your withdrawal of all your September 19th, 2011 discover requests and any demands and deadlines that currently are upon me in this case (CASE NUMBER: 2010 CC 3969 CITIBANK (SOUTH DAKOTA), N.A., PLAINTIFF, vs. RANDALL W. DREW, DEFENDANT filed in the County Court of the Eight Judicial Circuit of the State of Florida in and for Alachua County Civil Division) **until your full compliance** with the proper validation request that you received on September 6, 2011, and (iii) **for you to be absolutely clear** so that all parties, including the court, can see and understand your actions, intent, and response in this matter immediately.

Please note, any response(s) that I may give to the discovery request, sent to me September 19, 2011 and other filings and responses in this matter, do not in any way prejudice any of my rights or privileges, especially since your recent request(s) are of a timely manner and **I cannot absolutely count or rely on you to respond** in any timely manner to the important matters in this letter.

Further, please note that the validation and verification request and this letter are being made without prejudice to any of my rights or privileges. Accordingly, I hereby expressly reserve all rights and privileges including by way of specific example but not limited to the right to contest or challenge the validity of any contract(s), contractual provision(s), claim(s) or alleged debt(s) in the appropriate manner.

I await your prompt and full response to this matter.

Very truly yours,

Randall W. Drew

**Randall W Drew**
**11422 NW 16th Place**
**Gainesville, FL 32606**

November 18, 2011

CITIBANK (SOUTH DAKOTA), N.A., and or known as CITIBANK N.A.,
And Abbie Motley, Individually
P.O. Box 6235
Sioux Falls, South Dakota 57117-6235

"Exhibit D"

**BY CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Re: **CASE NUMBER: 2010 CC 3969 CITIBANK (SOUTH DAKOTA), N.A., PLAINTIFF, vs. RANDALL W. DREW, DEFENDANT, filed in the County Court of the Eight Judicial Circuit of the State of Florida in and for Alachua County Civil Division.**

Subject: Request for Validation/Verification and Claim/Alleged Debt Dispute
Pursuant to the Federal Fair Debt Collection Practices Act

Good Morning/Afternoon:

This is my request for claim validation and verification pursuant to the Federal Fair Debt Collection Practices Act. This request includes **any debt** allegedly owed to **original plaintiff** and any debt allegedly owed **to amended plaintiff**. Please note that it is not now, nor has it ever been my intention to avoid paying any obligation that I lawfully owe. In order that I can make arrangements to pay an obligation which I may owe, please document and verify your claim, that is, the alleged "debt" by complying in good faith with this request for validation and **notice that I dispute** part of, or all of the alleged debt that is listed and or alleged to be owed to the Plaintiff (**original and amended**) in the above referenced case. Accordingly, I request that you provide me an **authenticated, correct and true copy** of the following records:

**The original agreement, note, or contract** under which the debt was allegedly incurred, redacting any social security number(s) or driver license number(s) to prevent identify theft, and state under penalty of perjury that your client named above is the holder in due course of the agreement and will produce the original for my own and a judge's inspection should there be a trial to contest these matters.

The **legal name** and **address of the original holder** of the agreement, note, or contract under which the debt allegedly incurred, and if such debt has **been transferred and or assigned** in any way, to the party (i.e. Plaintiff) who claims to be owed such debt, then **clearly show and provide** such transfer and or assignment of the debt to the party (i.e. Plaintiff).

Re: **CASE NUMBER: 2010 CC 3969 CITIBANK (SOUTH DAKOTA), N.A.,
PLAINTIFF, vs. RANDALL W. DREW, DEFENDANT.**
Your records relating to Randall W. Drew
Request for Validation/Verification and Claim/
Alleged Debt Dispute
November 18, 2011
Page Two (2)

Identifying by name and address all persons, corporations, associations, **or any other parties having an interest** in legal proceedings regarding the alleged debt.

Additionally, I request that you verify under penalty(ies) of perjury, that:

As a debt collector, you have **not purchased** evidence of debt and are proceeding with collection activity in the name of the original creditor or any successor(s) in interest(s).

**You are authorized to act** for the party(ies) you claim to represent including but not limited to the original creditor or any successor(s) in interest(s).

You know and understand that **contacting me** again after receipt of this notice **without providing procedurally proper validation and verification of the alleged debt** constitutes the use of interstate communications in a scheme of fraud by advancing a writing, which you know or have any cause to believe is false or misleading with the intention that others rely on the written communication to their detriment.

Further, please note **especially** that this validation and verification request is being made without prejudice to any of my rights or privileges. Accordingly, I hereby expressly reserve all rights and privileges including by way of specific example but not limited to the right to contest or challenge the validity of any contract(s), contractual provision(s), claim(s) or alleged debt(s) in the appropriate manner.

**Please cease** any and all collection activity, per law, until you have provided **procedurally proper validation and verification of the alleged debt.**

I await your prompt and full response to this request.

Very truly yours,

Randall W. Drew

**Randall W Drew**
**11422 NW 16th Place**
**Gainesville, FL 32606**

November 18, 2011

CITIBANK (SOUTH DAKOTA), N.A., and or known as CITIBANK N.A.,
And Judy Delage, Individually
14000 Citicards Way
Jacksonville, Florida 32258

"Exhibit E"

**BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Re: **CASE NUMBER: 2010 CC 3969 CITIBANK (SOUTH DAKOTA), N.A., PLAINTIFF, vs. RANDALL W. DREW, DEFENDANT, filed in the County Court of the Eight Judicial Circuit of the State of Florida in and for Alachua County Civil Division.**

Subject: Request for Validation/Verification and Claim/Alleged Debt Dispute
Pursuant to the Federal Fair Debt Collection Practices Act

Good Morning/Afternoon:

This is my request for claim validation and verification pursuant to the Federal Fair Debt Collection Practices Act. This request includes **any debt** allegedly owed to **original plaintiff** and any debt allegedly owed **to amended plaintiff**. Please note that it is not now, nor has it ever been my intention to avoid paying any obligation that I lawfully owe. In order that I can make arrangements to pay an obligation which I may owe, please document and verify your claim, that is, the alleged "debt" by complying in good faith with this request for validation and **notice that I dispute** part of, or all of the alleged debt that is listed and or alleged to be owed to the Plaintiff **(original and amended)** in the above referenced case. Accordingly, I request that you provide me an **authenticated, correct and true copy** of the following records:

**The original agreement, note, or contract** under which the debt was allegedly incurred, redacting any social security number(s) or driver license number(s) to prevent identify theft, and state under penalty of perjury that your client named above is the holder in due course of the agreement and will produce the original for my own and a judge's inspection should there be a trial to contest these matters.

The **legal name** and **address of the original holder** of the agreement, note, or contract under which the debt allegedly incurred, and if such debt has **been transferred and or assigned** in any way, to the party (i.e. Plaintiff) who claims to be owed such debt, then **clearly show and provide** such transfer and or assignment of the debt to the party (i.e. Plaintiff).

**Re: CASE NUMBER: 2010 CC 3969 CITIBANK (SOUTH DAKOTA), N.A., PLAINTIFF, vs. RANDALL W. DREW, DEFENDANT.**
Your records relating to Randall W. Drew
Request for Validation/Verification and Claim/
Alleged Debt Dispute
November 18, 2011
Page Two (2)

Identifying by name and address all persons, corporations, associations, **or any other parties having an interest** in legal proceedings regarding the alleged debt.

Additionally, I request that you verify under penalty(ies) of perjury, that:

As a debt collector, you have **not purchased** evidence of debt and are proceeding with collection activity in the name of the original creditor or any successor(s) in interest(s).

**You are authorized to act** for the party(ies) you claim to represent including but not limited to the original creditor or any successor(s) in interest(s).

You know and understand that **contacting me** again after receipt of this notice **without providing procedurally proper validation and verification of the alleged debt** constitutes the use of interstate communications in a scheme of fraud by advancing a writing, which you know or have any cause to believe is false or misleading with the intention that others rely on the written communication to their detriment.

Further, please note **especially** that this validation and verification request is being made without prejudice to any of my rights or privileges. Accordingly, I hereby expressly reserve all rights and privileges including by way of specific example but not limited to the right to contest or challenge the validity of any contract(s), contractual provision(s), claim(s) or alleged debt(s) in the appropriate manner.

**Please cease** any and all collection activity, per law, until you have provided **procedurally proper validation and verification of the alleged debt.**

I await your prompt and full response to this request.

Very truly yours,

Randall W. Drew